STRAIN, Supt. of Banks, Respondent, v. MEKVOLD, et al, Appellant.

(257 N. W. 50.)

(File No. 7676.   Opinion filed November 8, 1934.)

*B. O. Stordahl*, of Sioux Falls, for Appellants.

*Miles E. Peck,* of Sioux Falls, and *John T. Grigsby*, of Pierre, for Respondent.

ROBERTS, P. J.   This action was brought by the plaintiff as superintendent of banks in charge of the First State Bank of Renner to recover from the defendants, who were officers and directors of the bank, the amount of alleged overdrafts evidenced by a number of checks.   The makers did not have funds on deposit to pay the checks, and, when the bank closed, these checks were found among the assets of the bank.   Defendants, with the exception of H. S. Wilkinson, who was cashier of the bank and a member of the board of directors, answered.   The court made findings that the plaintiff was entitled to recover the sum of $7,201.27 with interest, and entered judgment in accordance therewith, from which judgment and order denying motion for new trial defendants appeal.

Liability, if any, is to be determined by the provisions of section 8990, Revised Code 1919, which read as follows:

*"Officers Liable—Excessive Loans—Overdrafts.*   Every officer and director of any bank shall be held personally liable for all excessive loans made by his bank, in such amount as such loan may be in excess of the amount limited by law, and his liability thereon shall be the same as though such paper was indorsed by him, but to the extent only of the excessive amount.   He shall also be held personally liable for all overdrafts allowed by his bank."

Appellants maintain that the alleged overdrafts were not allowed by the bank and that the transactions were not within the purview of the statute.

The evidence is that the directors intrusted the active management of the bank to the cashier, H. S. Wilkinson; and that the checks in question were paid by the cashier without the knowledge of the appellants, were kept separately in an envelope, and were not charged to the accounts of the drawers.   It was in fact admitted by the cashier that he concealed from the appellants the infor-

mation that these checks were carried as cash items' and the practice of permitting certain customers to draw more money from the bank than they had on deposit. His testimony was: "All of these checks were in the possession of the bank at the time it closed. At the time of the closing I had them in the money drawer. Some time I had them in the safe, and sometimes in the money drawer. I did not keep those checks represented by Exhibit 'I' to '18' together with the checks that came for clearance. I kept them by themselves. And I kept them concealed part of the time. I kept them concealed when I figured somebody would discover them. At the time that we had directors' meetings I did not talk over with the directors the overdrawn accounts. I don't remember even speaking about ordinary overdrawn accounts. These checks carried as cash items were not called to the attention of the directors and they were never discussed."

An examiner employed by the state banking department made an inventory when the bank closed. He testified: "I had examined the bank before that time, but I don't remember on what date. I might have examined it in the year 1930. The Banking Department examines banks ordinarily twice a year. That is the usual custom. Most of the checks were drawn in 1931, but there are a few that go back as far as 1929. They date approximately two years prior to the closing. Possibly there were four examinations by the State Banking Department while those checks were carried as cash items. In the ordinary course of banking business a check when it is paid is charged up to the customer either on that day or the following day. When the customer has not enough money in his account to pay the check his account is shown to be in the red. There were some overdrafts or overdrawn accounts appearing on the books of the bank at the time I took the inventory. Such overdrafts or overdrawn accounts amounted to $33.17. About the only record of overdrafts is the customer's ledger sheet. * * * I checked the overdrafts in the amount of $33.17 which appeared on the books of the bank, and I have a list of them. Outside of the ledger and the individual ledger sheets there would be no records kept of overdrafts. I could find no record of these checks which have been identified as Exhibits 'I' to '18' appearing in the bank ledger as overdrawn checks or accounts. None of these Exhibits appears on the drawer's records or were charged against

drawer's accounts. These checks were never posted and never appeared on the bank's records as overdrafts. These Exhibits were in an envelope in the cash drawer when I took the inventory. There were some other checks held for clearance, but these checks, Exhibits '1' to '18,' were in a separate envelope, or bundle."

An overdraft arises where a customer of a bank draws from it more money than is standing to his credit in his account with the bank. State v. Jackson, 21 S. D. 494, 113 N. W. 880, 16 Ann. Cas. 87. It is not uncommon for a depositor to undertake to overdraw his balance, and there is authority in a bank to allow overdrafts. Morse on Banks and Banking (6th Ed.) § 358. Recognition of the practice is found in the provisions of section 8987, Rev. Code 1919, wherein it is provided that "in no case shall an overdraft of more than 60 days standing be allowed as an asset of any bank."

Without determining the liability of appellants if it had been shown that the accounts were overdrawn by their permission or if entries upon the books of the bank had been made of the overdrafts from which a presumption of knowledge might have attached, we will decide only the case presented. Appellants did not authorize the overdrafts; nor did they have information that the accounts were being overdrawn; nor were entries made of the payment upon the books of the bank. From the record, it is beyond question, and we so hold, that the cashier did not pay the checks in the regular course of banking, but misapplied the funds of the bank. The fact that he may have received no pecuniary benefit is not material. He concealed the nature of the transactions from other officers and directors of the bank and the state banking department, and, whatever may have been his motive, it would be unreasonable to say that he was acting for the bank and in good faith. The provisions of statute under consideration do not intend that directors shall become insurers of the fidelity of the cashier or other agents whom they may appoint.

A corporation can acquire knowledge or receive notice only through its officers and agents, but the rule that the corporation is charged with knowledge, though the officer does not in fact communicate his knowledge, has no application. Knowledge of the cashier of the misapplication of the corporate funds was not im-

puted to the bank. Warren v. Lincoln, 58 S. D. 196, 235 N. W. 597. For reasons stated, the payment of the checks were not over-drafts allowed by the bank, and the judgment and order appealed from are reversed.

All the Judges concur.